# UNITED STATES DISTRICT COURT
## District of Kansas

FILED
U.S. District Court
District of Kansas

MAY 29 2015

Clerk, U.S. District Court
By:_____ Deputy Clerk

**UNITED STATES OF AMERICA,**

**Plaintiff,**

v.

CASE NO. 15-M-6110 -01- KGG

**KAY TEE,**

**Defendant.**

# COMPLAINT

I, the undersigned complainant, being duly sworn state the following is true and correct to the best of my knowledge and belief:

## COUNT 1

**Attempted Coercion and Enticement**
**18 U.S.C. § § 2422**

Between March 28, 2015 and May 28, 2015, in the District of Kansas, the defendant,

**KAY TEE,**

knowingly attempted to persuade, induce, entice or coerce an individual to travel in interstate commerce to engage in prostitution, in violation of Title 18 United States Code §§ 2422.

## COUNT 2

**Interstate Transportation in Aid of Racketeering Enterprises**
**18 U.S.C. § 1952(a)(3) and (b)(i)(1)**
Page 1 of 4

Between March 28, 2015 and May 28, 2015, in the District of Kansas, the defendant,

## KAY TEE,

knowingly used a facility of interstate commerce, that is, a telephone, to facilitate the promotion, management, establishment, or carrying on of unlawful activity, that is, prostitution, in violation of Title 18 United States Code § 1952(a)(3) and (b)(i)(1).

## COUNT 3

### Wire Fraud
### 18 U.S.C. § 1343

On or about May 16, 2015, in the District of Kansas, the defendant,

## KAY TEE,

knowingly devised and intended to devise a scheme to defraud CHS-2 to obtain money by means of materially false and fraudulent pretenses and representations, and for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described as: claiming that he had arranged for CHS-1 and CHS-2 to connect to sell CHS-2's business; in violation of Title 18 U.S.C. 1343.

## COUNT 4

### Wire Fraud
### 18 U.S.C. § 1343

On or about May 21, 2015, in the District of Kansas, the defendant,

## KAY TEE,

knowingly devised and intended to devise a scheme to defraud CHS-1 and CHS-2 to obtain

money by means of materially false and fraudulent pretenses and representations, and for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described as: telling CHS-1 that CHS-1 and CHS-2 would each pay $500, and that CHS-1 should withhold $500 from the sale price if CHS-2 did not pay TEE's fee; in violation of Title 18 U.S.C. 1343.

## COUNT 5

### Money Laundering
### 18 U.S.C. § 1956(a)(1)(B)(i)

On or about May 27, 2015, in the District of Kansas, the defendant,

### KAY TEE,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the deposit of $100, which involved the proceeds of a specified unlawful activity, that is: wire fraud (18 U.S.C. § 1343) and use of a facility of interstate commerce to promote and establish prostitution (18 U.S.C. § 1952), knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, all in violation of Title 18 United States Code Sections 1956(a)(1)(B)(i).

I, Carl Hummell, further state that I am a Special Agent of Homeland Security Investigations in Wichita, Kansas and that this Complaint is based upon the following facts:

**See attached affidavit which is incorporated herein by reference.**

Continued on the attached sheet and made a part hereof:

___X___ Yes   _____ No

Carl Hummell, HSI
Wichita, KS

After reviewing this Complaint and the accompanying Affidavit, which has been subscribed and sworn to me, I find there is probable cause to believe that defendant, Kay Tee, has committed the offenses set forth in this Complaint, pursuant to Rule 5(b) and 4(a).

Honorable Kenneth G. Gale
U.S. Magistrate Judge
District of Kansas

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Carl Hummell, Special Agent of United States Department of Homeland Security, Homeland Security Investigations (HSI), being duly sworn under oath, do hereby state:

1.    I am a Special Agent of the Department of Homeland Security, Homeland Security Investigations (HSI), currently assigned to the Office of the Resident Agent in Charge (RAC) in Wichita, Kansas I have been a federal special agent for 18 years.

2.    I am authorized by law to conduct criminal investigations of violations relating to the immigration and nationality laws of the United States.  I am further authorized by law to conduct investigations that relate to the operation of commercialized prostitution in interstate commerce, trafficking and harboring of persons for immoral purposes, and the movement, smuggling, or laundering of currency contrary to law.

3.    I have probable cause to believe that KAY TEE has committed the following federal crimes:

   a.  Title 18 United States Code (U.S.C.) § 2422, that is, persuading, inducing, enticing, or coercing, or attempting to do so, any individual to travel in interstate commerce to engage in prostitution;

   b.  Title 18 U.S.C. § 1952, that is, using a facility of interstate commerce to promote, manage, establish, and carry on prostitution offenses; and

   c.  Title 18 U.S.C. § 1343, that is, using wire communications in interstate commerce to execute a scheme or artifice to defraud and obtain money or property by means of false representations.

   d.  Title 18 U.S.C. § 1956(a)(1)(B)(i), that is, conducting a financial transaction with proceeds from specified unlawful activity with the intent to conceal the nature, source, location, ownership or control of the proceeds.

4.    The information in this affidavit is information known to me as a result of my participation in this investigation or is information that has been communicated to me by other law enforcement investigators and witnesses, involved in this investigation.  I have not included

each and every fact known to me concerning this investigation. Instead, I have set forth only those facts that I believe are necessary to establish the existence of probable cause to support a complaint.

## Probable Cause

5.     Detectives from the Wichita Policed Department (WPD) Vice section have been conducting undercover investigations into the sale of commercial sex acts occurring within massage parlors in the Wichita area. WPD has undertaken multiple operations against various parlors in the Wichita area where sex acts were offered to undercover law enforcement in exchange for money. In many of these operations, Kay TEE would appear, either on a document, invoice, business card, or in person. A listing of these prior contacts has been set forth in support of a search warrant (15-M-6108-01-KGG) and is incorporated herein by reference.

6.     On March 28, 2015, a Confidential Human Source (CHS-1) placed a recorded phone call to 316-371-3883, a phone number known to be used by Kay TEE. Kay TEE answered. CHS-1 posed as a massage worker in New York seeking to open a parlor in Wichita. TEE agreed to help CHS-1 open a parlor in Wichita, beginning with scouting locations for a fee of $500. He requested the CHS-1 to wire money to his Bank of America account, which he provided, ending in 8317. He called back and offered to sell the CHS-1 an existing parlor business. CHS-1 agreed to discuss this further with TEE and ended the call.

7.     On April 2, 2015, CHS-1 placed a recorded phone call to 316-371-3883. TEE answered. He stated he had a parlor he could sell the CHS-1. He said the actual owner was currently out of town and would return on late Sunday (April 5, 2015). He needed to confirm

-2-

that the owner still wanted to sell her business. He stated the CHS-1 would be able to read reviews from customers of this parlor on www.rubmaps.com. (Sgt. Dan OBLINGER of the WPD Vice section knows that this website is an erotic massage parlor message forum, allowing patrons to post their prostitution escapades and to rate parlors and sex workers on the basis of their sexual services and prices.) TEE also stated the parlor in question offered "little action," a term of art that the CHS-1 knew to mean manual stimulation of male genitals for hire. TEE stated this parlor had good business, between 4 and 8 patrons a day, which OBLINGER has learned from prior investigations to be a steady rate of income for the Wichita erotic massage industry. TEE and the CHS-1 agreed to discuss this further after TEE spoke with the owner of the parlor in question.

8.     In subsequent phone calls, TEE told CHS-1 that the parlor in question was no longer available, and that he could set up a parlor for her himself if CHS-1 wished to pay.

9.     In May of 2015, the owner of a Wichita massage parlor operating as a commercialized prostitution enterprise called and left a message for CHS-1. This owner (CHS-2) was interested in bringing CHS-1 from another state to work in the operator's parlor. The Wichita Police Vice section had arrested an employee of this massage parlor for prostitution on February 6, 2015 when CHS-2 was present. CHS-1 used the same pseudonym and phone number to contact CHS-2 as CHS-1 used to contact TEE. CHS-1 contacted CHS-2, who agreed to hire CHS-1 as a prostitute from out of state.

10.     On May 15, 2015, CHS-2 arrived at the Eisenhower National Airport in Wichita, was arrested, and taken to meet Detective Robert SHEA of WPD Vice for an interview. During the interview, CHS-2 provided detailed information about TEE and his connection to criminal

-3-

enterprise in massage businesses in Wichita. This person was enlisted as a confidential human source (CHS-2).

11.     On May 15, 2015, CHS-2 made a recorded phone call to TEE and informed him there was trouble at CHS-2's parlor, and that CHS-2 wished to sell it. TEE stated he could find a buyer.

12.     On May 16, 2015, CHS-2 spoke with TEE again with SHEA present. CHS-2 informed TEE that she was able to connect with a buyer in Flushing, New York who spoke good English. CHS-2 intended to sell the parlor to this person in New York. TEE quickly asked what the buyer's name was, and CHS-2 provided it. TEE provided CHS-1's phone number and inquired if this was the right number of the buyer. CHS-2 stated it likely was the same. TEE immediately claimed that CHS-1 was his customer and that he had arranged for CHS-1 and CHS-2 to connect to sell CHS-2's business (this representation was false). TEE told CHS-2 to pay him whatever CHS-2 wanted and told CHS-2 to contact CHS-1 to make this arrangement. After this call disconnected, TEE called CHS-1 and left a message informing CHS-1 that CHS-2 would be calling.

13.     On May 18, 2015, CHS-1 made a recorded call to TEE. TEE told CHS-1 that CHS-1 shouldn't buy CHS-2's store, and instead he would open up a parlor for CHS-1. TEE said the police had come to shut down CHS-2's store and CHS-2 was in a lot of trouble. TEE stated it was a half-service operation and CHS-2 would have to go to court. When CHS-1 indicated continuing interest in the parlor, TEE stated he would still pick CHS-1 up at the airport and take CHS-1 to CHS-2's shop. TEE quoted CHS-1 $500 for the arrangement. TEE stated he could also handle business advertising for CHS-1.

-4-

14.    On May 20, 2015, CHS-2 made a recorded call to TEE. CHS-2 told TEE the deal to sell the parlor to CHS1 was done and that CHS-1 would arrive by airplane on May 28, 2015. TEE told CHS-2 to sell to CHS-1. Tee stated that his fee was $500.

15.    On May 20, 2015, SHEA and OBLINGER debriefed CHS-2 regarding TEE. CHS-2 stated the following:

     a.   TEE helps massage parlors in Wichita, by doing handy man work, construction, advertising, obtains and transports female workers, installs camera systems, and performs tax preparation for these businesses.

     b.   One of the girls who worked for CHS-2 told CHS-2 not to fight TEE because everyone is scared of him.

     c.   In the past, TEE has offered to do taxes for CHS-2 for a fee of $440.

     d.   CHS-2 has been to his business at 2818 S. Hydraulic and believes the taxes are prepared by his girlfriend, Katie TANG whom CHS-2 has met many times when TANG has been working there as an accountant.

     e.   TEE also mentioned to CHS-2 that the ads for CHS-2's business are not sexy enough and that TEE would do better advertising for a fee, on Backpage and Craigslist.

     f.   TEE showed CHS-2 that he had a live video feed on his personal cell phone from Diamond Spa's cameras on Rock Road.

     g.   TEE has provided two female massage workers for CHS-2 in the past, one from Diamond Spa at 180 S. Rock and the other had worked at a lot of unspecified massage parlors in Wichita. TEE told CHS-2 that he could get girls from Las Vegas, NV if CHS-2 needed one.

16.    On May 21, 2015, CHS-1 made a recorded call to TEE. TEE continued to warn CHS-1 of the police investigation into CHS-2's business. CHS-1 told TEE that CHS-1 had bought the parlor and paid a down payment to CHS-2, and that CHS-1 was not deterred by the police activity. CHS-1 told TEE that CHS-1 intended to offer manual stimulation of the male genitals during massages, but would be careful to avoid police action. CHS-1 asked TEE if

CHS-2 would pay TEE's fee.  TEE told CHS-1 that each of them needed to pay $500.  TEE further instructed CHS-1 to pay TEE an additional $550 for him to file 5 government documents when CHS-1 arrived, and that he would pick CHS-1 up at the airport and drive CHS-1 to the parlor.  TEE told CHS-1 to withhold $500 from the sale price if CHS-2 did not pay TEE the fee.

17.     On May 27, 2015, Kay TEE called CHS-1 and left a message to confirm CHS-1's arrival.  CHS-1 returned TEE's call to confirm the arrival time.  CHS-1 further stated that CHS-1 spoke to CHS-2 and is confident that CHS-1 can do manual stimulation in the shop and not arouse police suspicion.  CHS-1 asked TEE what he could do to help.  TEE advised he could help with everything, including tax preparation.  TEE reiterated he would pick up CHS-1 at the airport.

18.     Later on May 27, 2015, CHS-2 called TEE and stated CHS-2 spoke with CHS-1.  CHS-2 asked if CHS-2 could pay a portion of TEE's finder fee.  TEE advised his girlfriend (known to be Katie TANG) would text CHS-2 the routing number for his bank account.  CHS-2 agreed to send $100 to TEE's account.  Shortly thereafter, CHS-2 received a text message with a photo attachment of a check front, showing the same Bank of America account number ending in 8317, styled as Alert America, 2106 S. Broadway.  This is a non-prostitution business known to be operated by Kay TEE.

19.     CHS-2 went to a Bank of America branch and presented $100 in cash for deposit into the above account, which the teller accepted and deposited into the account.

20.     On May 28, 2015, TEE drove to the Wichita airport to pick up CHS-1, where he was taken into custody by officers of WPD and special agents of Homeland Security Investigations (HSI).  He agreed to speak to law enforcement, after Miranda warning, and

-6-

advised that an individual, Y.L. (previously arrested for prostitution on March 27, 2015, out of a massage parlor associated with Kay TEE) was living at 2910 N. Meadow Oaks  Court, a residence owned by Kay TEE and Katie TANG.

## SUMMARY

21.     Based on the foregoing information, I believe probable cause exists that Kay TEE is facilitating the operation and establishment of prostitution businesses in Wichita, Kansas, and has engaged in the following criminal violations:

   a. Title 18 U.S.C. § 2422, that is, persuading, inducing, enticing, or coercing, or attempting to do so, any individual, that is, CHS-1, to travel in interstate commerce to engage in prostitution;

   b. Title 18 U.S.C. § 1952, that is, using a facility of interstate commerce to promote, manage, establish, and carry on any unlawful activity, that is prostitution offenses in violation of K.S.A. 21-6419 and 21-6420;

   c. Title 18 U.S.C. § 1343, that is, using wire communications in interstate commerce to execute a scheme or artifice to defraud and obtain money or property by means of false representations; and

   d. Title 18 U.S.C. § 1956(a)(1)(B)(i) by knowingly conducted a transaction designed to conceal or disguise the nature, source, or ownership of the proceeds of specified unlawful activity, that is, using his Alert America business account to obtain the $100 that he knew represented proceeds of his wire fraud (18 U.S.C. § 1343) and his use of the telephone to promote and establish prostitution (18 U.S.C. § 1952), both of which are specified unlawful activity under 18 U.S.C. § 1956(c)(7)A) and 18 U.S.C. § 1961(1)(B).

Carl Hummell, Special Agent
HOMELAND SECURITY INVESTIGATIONS

-7-

Sworn to before me this 27th day of May, 2015.

HONORABLE KENNETH G. GALE
United States Magistrate Judge