1

```
1              IN THE UNITED STATES DISTRICT COURT
                      DISTRICT OF KANSAS
2

3   THE UNITED STATES OF AMERICA,

4              Plaintiff,

5        vs.                        District Court
                                    Case Number
6   KAY TEE,                        15-10178-01-JTM

7              Defendant.

8

9              TRANSCRIPT OF PROCEEDINGS

10       On the 15th day of July, 2016 at 3:30 p.m.
    came on to be heard in the SENTENCING in the
11  above-entitled and numbered cause before the HONORABLE
    J. THOMAS MARTEN, Judge of the United States District
12  Court for the District of Kansas, Sitting in Wichita.
             Proceedings recorded by mechanical
13  stenography.
             Transcript produced by computer.
14

15
    APPEARANCES
16
             The Plaintiff appeared by and through:
17               Mr. Jason Hart
                 Assistant United States Attorney
18               301 N. Main, Suite 1200
                 Wichita, Kansas 67202
19
             The Defendant appeared in person, by and
20  through:
                 Mr. Douglas Adams
21               Ney & Adams
                 200 N. Douglas
22               Suite 300
                 Wichita, KS 67202
23
             Assisting as Mandarin language interpreter is
24  Chanping Curtis.

25
```

2

1                        INDEX

2
Government Sentencing Recommendations        13
3   Defense Sentencing Recommendations           23
    Allocution                                   30
4   Imposition of Sentence                       34
    Reporter's Certificate                       39
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              (Proceedings commenced at 3:30 p.m.)

 2              THE COURT:  Good afternoon.  This is the

 3    United States District Court for the District of

 4    Kansas, Case Number 15-10078-01, United States of

 5    America versus Kay Tee.

 6              You can keep your seats, but if would you note

 7    your appearances, please.

 8              MR. HART:  Thank you, Your Honor.  The

 9    Government appears by and through Jason Hart, Assistant

10    United States Attorney.

11              THE COURT:  Thank you, Mr. Heart.

12              MR. ADAMS:  May it please the Court.  Kay Tee

13    appears in person, with counsel, Douglas Adams.

14              THE COURT:  Thank you, Mr. Adams.

15              This matter comes on today for sentencing.

16    Are there any preliminary matters from the Government,

17    Mr. Hart?

18              MR. HART:  No, Your Honor.

19              THE COURT:  From the defendant, Mr. Adams?

20              MR. ADAMS:  Your Honor, I had made objections

21    to the Presentence Investigation Report.

22              THE COURT:  We'll get to that, but apart from

23    those?

24              MR. ADAMS:  I was just going to tell the Court

25    that I -- I had not had enough time, apparently Mr. Tee
```

1  had not had enough time to convey to me certain details

2  within the document that he wants to make, at least

3  further clarifications and corrections to and I

4  apologize for not having done that before now but there

5  are going to be some of those, Your Honor.

6             THE COURT:  That's not a problem at all and we

7  will get to that in very short order, Mr. Adams.

8             Well, I note that Mr. Tee was convicted by a

9  jury of attempted coercion and enticement to engage in

10 prostitution, one count of interstate transportation in

11 aid of racketeering enterprises, and one count of money

12 laundering.  I accepted the verdict, ordered

13 preparation of a presentence report.

14            It appears that the parties have received

15 copies of the report.  I do note there are two

16 objections that have been filed on Mr. Tee's behalf and

17 Mr. Adams has indicated that there are some further

18 corrections that need to be made to the presentence

19 report, as well.

20            And as I say, we will get to those in short

21 order.

22            Mr. Adams, you have reviewed the report with

23 Mr. Tee, with the help of an interpreter?

24            MR. ADAMS:  Yes, Your Honor.

25            THE COURT:  And, Mr. Tee, you have reviewed

1  the presentence report with Mr. Adams, with the help of

2  an interpreter?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Have you been satisfied with his

5  representation of you in this case?

6          THE DEFENDANT:  Yeah.

7          THE INTERPRETER:  Yeah.

8          THE COURT:  Okay.  Well, Mr. Adams, let's go

9  ahead and go to the corrections that you feel need to

10 be made at this point and then we'll go to the

11 objections.

12         MR. ADAMS:  Thank you, Your Honor.

13         There's some specific corrections -- well, I

14 guess objections that Mr. Tee had indicated between

15 Paragraphs 14 and 25 but since I have already objected

16 to that inclusive of those paragraphs, I don't believe

17 it is further necessary to specify which details are

18 at -- in opposition.

19         THE COURT:  All right.

20         MR. ADAMS:  However, with regard to Paragraph

21 42, Page 10 of the presentence report, at the very end

22 of that paragraph it indicates residence of 2910 North

23 Meadow Oaks Court being a residence owned by Kay Tee

24 and Kay Tee Tang.

25         THE COURT:  Right.

1          MR. ADAMS:  In actuality that is a residence

2    owned by Kay Tee and Wen-yin, W-e-n hyphen Y-i-n.

3          THE COURT:  All right.  We can certainly make

4    that correction.

5          MR. ADAMS:  Your Honor, Page 13, Paragraph 67.

6          THE COURT:  All right.

7          MR. ADAMS:  Paragraph 68, I apologize.

8          The last sentence of that particular paragraph

9    indicates that his family lives in the United States

10   and that's actually not true.  They all reside in

11   Malaysia.

12         THE COURT:  So nine siblings live in Malaysia?

13         THE INTERPRETER:  Ten, yeah, in Malaysia.

14         Ten brothers and sisters in Malaysia.

15         MR. ADAMS:  Ten brothers and sisters live in

16   Malaysia.

17         THE COURT:  Okay.  None of his brothers and

18   sisters live in the United States.

19         THE COURT:  Okay.  Thank you.

20         MR. ADAMS:  And I believe those are the only

21   two corrections he wanted to make at this time.

22         THE COURT:  All right.  Well, let's turn then

23   to the objections.

24         The first one goes to essentially what you are

25   claiming is extraneous material that is set out in

1  Paragraphs 14 through 25.  First thing I would note is

2  that none of that information factors into the offense

3  level here and so it's not going to effect sentencing.

4  It is, however, and as the Government and probation has

5  pointed out, either party is entitled to provide to

6  probation any information that it feels would be

7  helpful to the Court in learning about who the

8  defendant is and this all provides background

9  information to me as much as anything else and it truly

10  is not going to have any impact at all on at least my

11  proposed sentence in this case so I am overruling that

12  objection.

13         The second objection goes to the four level

14  increase of the offense involved fraud and I have read

15  through both your objection, Mr. Adams, as well as the

16  Government's response and I guess the thing that

17  strikes me is that money laundering basically in and of

18  itself, even if it's not reflected that way in the

19  presentence report, constitutes a fraud.

20         It is a way of taking ill begotten gains and

21  converting them into what appear to be legitimate

22  monies and so I am also overruling that objection and

23  the four level increase in the offense level will

24  stand.

25         As we turn now to the sentencing itself, as

1  the parties know it's my job to impose a sentence

2  that's sufficient but not greater than necessary to

3  comply with the purposes of sentencing identified in 18

4  U.S.C. Section 3553(a)(2).  I always consider the

5  sentencing guidelines which promote uniformity to some

6  extent, and they also do help me in determining an

7  appropriate sentence by weighing the basic nature of

8  the offense, or in this case the offenses, as well as

9  the aggravating and mitigating factors.

10      I have considered the testimony that I've

11  heard in this case throughout the trial.  I have

12  considered the presentence report that's been prepared

13  in this case and after reviewing the report I am

14  finding that the guidelines range of 33 to 41 months is

15  correctly calculated based on a Total Offense Level of

16  20 and a Criminal History Category of I.

17      I do note that this offense involves Mr. Tee

18  attempting to entice a confidential source to engage

19  in -- at least arguably to engage in prostitution by

20  way of telephone conversations with the confidential

21  source.  He also committed money laundering by

22  conducting a financial transaction, that being the

23  deposit of a hundred dollars which involved the

24  proceeds of unlawful activity.

25      After considering these factors and the

1  advisory sentencing guidelines, the nature and

2  circumstances of the offenses, and Mr. Tee's history

3  and characteristics, I've got to tell you that I am

4  really struggling with what is an appropriate sentence

5  here.  The low end of the guidelines is 33 months but I

6  am left with the nagging feeling that that is greater

7  than necessary period of time to serve the purposes of

8  sentencing.

9          And let me explain this, and I would like to

10 have the parties address this to some extent as the

11 hearing goes on today.

12         First of all, it's not my place to substitute

13 my judgment for that of the jury and I don't intend to

14 do this, but I would not have been surprised by a

15 verdict that went the other way in this case and this

16 is one of the advantages and one of the disadvantages

17 of having sat through a trial.

18         The second thing, and I am not saying there

19 wasn't sufficient evidence there, because clearly there

20 was to support the verdict or I would have granted a

21 judgment of acquittal at some point and so I'm not

22 suggesting there wasn't enough evidence.  What I am

23 saying, though, is that, first of all, the involvement

24 that I heard about in this case, the evidence that I

25 reviewed -- and this goes not only to the trial but to

1  the in limine motion as well and the materials that the

2  Government used against Mr. Tee, establishes the

3  offense but I think this is one of the offenses where

4  the title of the offense almost sounds worse than the

5  reality of the conduct.

6          I am not suggesting for a moment that the fact

7  that Mr. Tee is from Malaysia and that prostitution is,

8  to a certain extent an acceptable part of the way they

9  live in Malaysia but I think he may not have used his

10 conduct as being as untoward and as evil as some people

11 might view it here.  That does not justify in any way

12 what he has done but I do think it goes to his state of

13 mind to some extent.

14         Additionally, while there's no question but

15 what he told the undercover agent that he was working

16 with that she could pretty much do whatever she wanted

17 to do and he certainly is smart enough, having a degree

18 in electrical engineering and a master's degree on top

19 of that, he certainly is smart enough to know what he

20 was suggesting and when he offered to assist her in

21 terms of placing ads and getting business, he

22 understood that but he was acting more as an aider and

23 abetter than he was as a principal in terms of his

24 conduct.  And I think for those reasons, the sentence

25 of 33 months, which is the low end of the guidelines,

1  is overly sufficient, it's greater than necessary to

2  serve the purposes of sentencing and I think that

3  a -- an 18-month sentence, which is a little more than

4  half of the low end of the guidelines still addresses

5  the seriousness of the offense, it promotes respect for

6  the law, it provides just punishment for what Mr. Tee

7  has done, it should afford adequate deterrence from

8  further criminal conduct, and protect the public from

9  further crimes.

10      Additionally, it's -- although nobody can say

11  with absolute certainty, I think it's probably likely

12  that Mr. Tee will be deported after he serves his

13  sentence in this case and that, too, is a factor that I

14  take into account.  While it's possible he may not and

15  he was here legally, the fact of the matter is, I think

16  with three felony convictions, it is likely,

17  particularly since at least one, maybe two would

18  involve moral turpitude.

19      I do intend to impose a two-year term of

20  supervised release and, of course that will only come

21  into play if Mr. Tee is not deported but the supervised

22  release term, in addition to an 18-month imprisonment

23  sentence will allow Mr. Tee the opportunity to receive

24  correctional treatment in an effective manner and will

25  assist with community reintegration, all in accord with

1  18 U.S.C. 3559 (a)(2)(D) if he is not deported.

2          He will be required to pay a special

3  assessment totalling $300 to the Crime Victims Fund.

4          There will be no fine based upon Mr. Tee's

5  admittedly very, very difficult financial situation.

6  He also, I understand, has a major backlog on child

7  support and if there is money being paid into court I

8  would rather have it go toward child support than I

9  would to a fine.

10          I do intend to impose the mandatory and

11  special conditions of supervision that are set out in

12  detail in Part D of the presentence report.  Those

13  include the mandatory condition for DNA collection;

14  Mr. Tee's conviction also requires sex offender

15  registration.

16          I am waiving the mandatory drug testing

17  condition because Mr. Tee, apparently, has no history

18  at all of substance abuse.

19          Mr. Tee will be prohibited by federal law from

20  possessing or purchasing a firearm or ammunition as a

21  result of your conviction.  The prohibition against

22  possessing or purchasing a destructive device or other

23  dangerous weapon is warranted based on officer safety.

24          The nature of the offense and the history

25  outlined in the report warrant the special search

13

1  condition.  As I've noted, you are a citizen of

2  Malaysia and your conviction in this case may impact

3  your lawful status in the U.S.

4        You will be required to comply with all

5  directives of immigration officials related to your

6  residency status in the U.S. and the determination of

7  potential removal from the U.S..

8        You are on bond.  You have complied with the

9  conditions of your release.  I do intend to allow you

10 to voluntarily surrender.

11       I should note, as well, Mr. Adams, that I have

12 reviewed your motion for a variance or downward

13 departure in this case to a non-confinement sentence of

14 probation.  I am rejecting that but of course we'll

15 hear argument because what I have announced here is my

16 tentative sentence, not the final sentence.

17       Mr. Hart, position of the Government.

18       MR. HART:  Thank you, Your Honor.

19       In this particular case, some of the Court's

20 comments, and I understand the manner in which they are

21 presented, I'll try to address each one of those

22 questions that the Court has raised, I think in our

23 current state of our culture prostitution is one of

24 these things that people are starting to learn a little

25 bit more about.

1         Frequently I hear references to prostitution

2    as being the oldest profession and I would submit to

3    the Court that it is not, in fact, the oldest

4    profession.  It is, in fact, more accurately the oldest

5    form of oppression.  This is the subjugation of women

6    to the will to men and, on occasion, the subjugation of

7    men but, ultimately, it's a form of slavery that we

8    see.

9         THE COURT:  So what's that have to do with

10   this case and this set of facts?

11        MR. HART:  Well, Your Honor, I think when we

12   deal with 12 people in the box, they're not coming into

13   the courtroom without any other baggage or

14   their -- their cultural views or --

15        THE COURT:  Well, I've already noted they

16   convicted him on these charges and I'm trying to get

17   beyond that to Mr. Tee's state of mind and that's

18   really what I'm addressing with this, Mr. Hart.

19        Not the larger question of whether it's

20   oppressive or not because I think nearly everybody in

21   their right mind, particularly -- and not just Third

22   World but here in the U.S., that it is slavery and

23   oppressive --

24        MR. HART:  Well --

25        THE COURT:  -- but I'm looking at this man and

1  these circumstances.  This particular defendant.  And

2  so that's what I really want to focus on here.

3          MR. HART:  All right.  Well, this particular

4  defendant carried on that tradition of oppression.

5  What he was doing was he was taking advantage of a

6  particular population and in Wichita, Kansas I would

7  submit that the women that he was taking advantage of

8  reflect a nearly invisible population.  They were

9  middle aged, Chinese, non-English speaking women for

10 the most part.  Almost exclusively.

11         These are precisely the type of women that

12 folks like Bryan Stevenson would be advocating on

13 behalf of.  They don't have a voice.  They are an

14 exploited minority and that was the defendant's prey

15 and we know that there is other individuals that are

16 preying upon them, absolutely, the Johns, for instance,

17 are actively preying upon them.  We saw that with the

18 Rubmaps demonstrative aid where they are posting and

19 freely talking about them.

20         And what I would submit to the Court is that

21 in and of itself is endemic of what the sentence for

22 this particular defendant and the stuff that he's

23 involved with relate to and why the seriousness of his

24 conduct actually warrants a higher sentence, and I

25 would submit 36 months would be appropriate.

1          What the defendant did in this particular

2    case, this Court has already noted in its memorandum

3    denying the motion for judgment of acquittal.  The

4    Court observed that the defendant started out with an

5    assumption that Lucy wanted to purchase a massage

6    business rather than any other kind of shop.  That goes

7    to his intent and his state of mind.

8          Number two, his admitted experience working

9    with other massage parlors.

10          Number three, his knowledge regarding those

11   businesses, including the propensity of owners to

12   switch from quoting what this type of business, end

13   quoting what -- after making a certain amount of money,

14   the average number of clients, what sex acts certain

15   shops provide and whether a particular shop had

16   problems with the police.  What that would suggest is

17   the defendant knew all along that this was illegal.

18   That he knew it was wrong.  And that he was still going

19   to take advantage of it.

20          Number four --

21          THE COURT:  I don't think there is any

22   question about that at all, you're absolutely right

23   about that, Mr. Hart.

24          MR. HART:  Number four, that his use of the

25   sex industry vernacular also goes to his awareness, his

1  knowledge, and I think that kind of gets to the

2  core -- one of the core additional questions of whether

3  there was some kind of cultural barrier.

4          And that was an argument that Mr. Adams made

5  and I think that falls flat because it's very clear

6  that the defendant understands that this is illegal,

7  that this is oppressive but regardless of those things,

8  he is still going to get his cut and he's going to get

9  his share.

10          I think it's particularly notable that he

11  specifically references Rubmaps.  Quite frankly, Your

12  Honor, until I started doing these cases I had no idea

13  that Rubmaps existed.  Pretty sure the jury over there

14  had no idea that Rubmaps existed and, quite frankly, I

15  would expect the Court and Mr. Adams probably had no

16  idea that Rubmaps existed.  But the defendant did.  And

17  the defendant knew what was going on in those places.

18          So, what he does is he essentially approaches

19  these women who are in an oppressive environment and

20  says, Sure, I'm going to help your business.  I'm going

21  to post salacious ads that encourage only one type of

22  customer, that being the Johns, and, sure, I'm going to

23  provide you services that will not advance the

24  legitimacy of your business, and I'm going to take my

25  cut from you, and you, and you, and you, and you, and

1  you, and that is what he was doing.

2          So, I'm not here to suggest that he is an over

3  Lord, as was repeatedly mentioned in the defendant's

4  motion.  He's not an over Lord.  Heck, if he was an

5  over Lord he would probably be looking at different

6  charges, and that's an important thing to know.

7          Is that we're not talking about a crime that

8  involves force or fraud or coercion, because that would

9  be a 5091 offense and would involve a mandatory minimum

10  of 15 years.  The nature of this particular type of

11  offense contemplates that there may be a participation,

12  to some degree, by the victims, the people that are

13  being victimized.

14          And so he's not an over Lord but he is a

15  broker.  He is absolutely a broker by his own

16  admissions and his conversations with Lucy, he's done

17  it lots of times and he's done it for folks that are

18  outside of the -- outside of the State of Kansas and

19  from his Backpage accounts, the trial exhibits Number 7

20  and Number 8 and so on, those Backpage accounts show

21  that his account that was created had been operating

22  since at least May of 2010.  So he has been doing this

23  for five years.

24          What the defendant says in his motion, there's

25  some parts of it that are correct.  The defendant is

1  absolutely correct that he tried to shield himself from

2  accountability.  There is no question about that.

3  Because we see that in using his ex-wife's name in the

4  Backpage ads as the e-mail address.  He uses his

5  business as a front for the criminal transactions, but

6  it was not done because he didn't know any better, it

7  was done to shield himself from being detected in a

8  criminal venture.

9         I would note we did not manufacture

10 jurisdiction in this.  This is not a thing where the

11 defendant got caught up and entrapped.  And, in fact,

12 what we did is we followed the defendant's prior

13 experience which he acknowledged was helping people

14 from other states set up shops in Wichita, and we let

15 him lead the charge and he did.  He's the one that is

16 referencing Rubmaps, table showers, and just going

17 through the litany of things, identifying shops that

18 are off the radar from police.

19        The defendant is absolutely incorrect when he

20 says that the charges, had they been local, this case

21 would have only been misdemeanor charges.  In fact,

22 this conduct would be a felony at the state level under

23 K.S.A. 21-6420.  This argument from the defense, in my

24 view, is a false equivalent to say, Well, it would be

25 less at the state level so it shouldn't be as serious

1   here.  It is very serious there at the state level.

2          And -- and as it relates to the charging

3   decision, what we were dealing with here -- well, the

4   charging decision as to what to charge him with is no

5   indication of the viability of other evidence.  This

6   particular case was simply easiest to prove with local,

7   non-transient witnesses, meaning we didn't have to

8   bring in a Asian, Chinese female massage parlor

9   operator to come in and say what her experience had

10  been in dealing with the defendant.  Or a line of them

11  when they really have no connection to Wichita and,

12  quite frankly, if they had moved on, why would they

13  want to come back.

14          The defendant's argument that he has made a

15  mistake and that that somehow is mitigating I think is

16  disingenuine (sic) given the evidence.  He knew he was

17  breaking the law the entire time.  That's why he

18  shielded himself from accountability and there is

19  nothing about that conduct, it's really mitigating.

20          He targeted a specific population and even

21  though in this particular case law enforcement contacts

22  him it should be clear that he has made himself part of

23  the system.  He is the guy to find the place.  He

24  targeted a population that was isolated, that was

25  vulnerable and, quite frankly, unlikely to avail

1  themselves of rescues or resources or help.  He

2  cultivated an industry within our community that

3  oppresses a vulnerable population while profiting from

4  that oppression.

5       And I think at a certain point to say, Well,

6  you know, he's not the -- he's not the over Lord or

7  he's not the operator of the parlor itself or he's not

8  beating these women or anything like that, I think that

9  still fails to acknowledge that what he is doing is

10 ultimately taking advantage of these women and to not

11 acknowledge his role in their oppression is essentially

12 to relegate them to something less than, to unworthy of

13 the protection and rescue that is afford by our

14 statutes.

15      While the defendant says that this is an

16 aberration I think the evidence would suggest that it

17 is not.  That would require overlooking his own

18 admissions of long-term involvement and his accumulated

19 knowledge of the industry.  This is not aberrant

20 conduct for him.  This was regular type activity, doing

21 what he does.

22      In terms of confinement and what it does,

23 well, in my view, confinement signals to the

24 traffickers and to the Johns that taking advantage of

25 the women in our communities, our mothers, sisters,

1  daughters, cousins, it's not going to be tolerated.   36

2  months is nowhere near the sentence that most of these

3  women have endured inside these business that the

4  defendant was establishing and that he was profiting

5  from.   36 months is sufficient, in the Government's

6  view, particularly when we consider how much longer he

7  has been engaged in profiting from this type of

8  business.

9        I think I have addressed some of the Court's

10 questions about whether or not the defendant had -- may

11 not have viewed his conduct as untoward or evil as some

12 people view it here.  I think he did understand what he

13 was doing and he had the appropriate perspective as to

14 his conduct.

15       And as far as acting as an aider and abetter

16 rather than a principal, in terms of facilitating the

17 operation of a prostitution business, the only thing he

18 was not doing to do, that was standing behind the

19 counter, or actually engaging in the massages himself.

20 He did essentially everything beyond that, doing the

21 advertising, negotiating the contracts, and extracting

22 money in the form of surveillance equipment, telephone

23 and internet service, and so forth.

24       With those things in mind, Your Honor, I think

25 I have answered the questions that the Court has had.

1  It would be the Government's perspective that 36 months

2  for this particular type of defendant and given the

3  type of conduct that he did would be appropriate.

4       Thank you, Your Honor.

5       THE COURT:  Thank you, Mr. Hart.

6       Mr. Adams.

7       MR. ADAMS:  Your Honor, I believe that

8  Mr. Hart overstates the boundaries of what Mr. Tee can

9  be proven to have been involved with, in addition to

10 what he admits to when he talked to law enforcement on

11 multiple occasions.

12      He admits to and is very clear that he

13 provided peripheral services to these businesses.  He

14 assisted, as the Court indicates, in an aider and

15 abetter fashion, he assists businesses in getting them

16 set up and providing services to those businesses to

17 continue to operate.

18      In his mind, as I explained in the sentencing

19 memorandum, that was a way of insulating himself.  That

20 was a way of placing a barrier between himself and what

21 the activities of the massage businesses themselves

22 perform.  I believe, as I explained in the motion or

23 the memorandum, that that was an erroneous way of

24 thinking of his situation and probably one that placed

25 him directly in the crosshairs of law enforcement in

1  terms of bringing him to this point and his failure to

2  recognize that association as being potentially

3  criminal in nature is what I think brings him to the

4  point of being here for a sentencing today.

5       It's not that he went out of his way trying to

6  solicit people from out of state to come to Wichita to

7  open up businesses to become prostitutes, because I

8  don't think there is any evidence of that anywhere

9  throughout anything that was provided to the Court in

10  the evidence at trial, and in the insinuations that

11  come from the other paragraphs in this presentence

12  report.  A lot of innuendo and speculation could come

13  out of that information but none of it suggests that he

14  was outwardly actively recruiting anybody to come to

15  Wichita for that purpose.

16       And, so, the Government speculates as to what

17  it is that those things mean, that because he was

18  peripherally involved in these businesses and providing

19  these types of services that they have some greater

20  role.  Did he have the role of the person that was

21  actually a facilitator of prostitution?

22       And that's where we have divergent theories of

23  what exactly is going on with Mr. Tee because I

24  suggest, and I brought evidence in, that he was

25  involved in all kinds of things in Wichita, not limited

1  to in any way massage business.  He was taking care of

2  signs for various businesses, including, I believe a

3  smoke shop, including restaurants, he ran a restaurant

4  for a period of time.  He had a great deal of

5  involvement with the Asian community and very -- and a

6  multitude of aspects, interpretation, translating

7  services, essentially, tax returns.

8         He admits freely that he had business

9  transactions with massage parlors and these were people

10 that kept coming back to him and asking for additional

11 services and he agreed but he didn't go out of his way

12 to try to get those people to be business associates of

13 his, it was the other way around.

14         He was a person that was available to provide

15 contract services for the things that they desired,

16 that they needed, that they needed to run their

17 businesses.  And because of these contacts in this

18 service that he provided, he became knowledgeable about

19 what they did.  And over time, and in the course of

20 looking at the ads that he posted, it seems fairly

21 obvious that there were -- that there was an incentive

22 for him to continue that business association.  He

23 continued to be able to provide the services that were

24 asked of him and therefore he -- the -- the business

25 association was able to continue.

1          To categorize that as the same thing as

2    establishing these businesses, as taking advantage of

3    the women individually that were coming to these

4    businesses, that's a leap of faith that I don't think

5    this Court can take with him, with the Government's

6    position.  And the reasons it's a leap of faith is

7    because of what you have seen in this past, of this

8    51-year-old man that's been working and has this kind

9    of education, has been living in the United States for

10   24 plus years, legally, lawfully, in many, many

11   businesses and the transactions that he's had and the

12   computer analyst and other types of things, he's a

13   business man that has demonstrated an ability to earn a

14   living without any massage business supplying the basis

15   for his income, which is what has been going on for the

16   last year while he's been on house arrest and GPS

17   monitoring.

18          He continues to demonstrate that massage was

19   just one small piece of how he conducted himself and

20   unfortunate part of his life that he wished he had

21   never had anything to do with.  That said, he did it,

22   he can't deny the fact that he did and that's why I

23   suggest to the Court that it was an apparition, that

24   this is not the way he conducted all of his business.

25          He didn't try to take advantage of people, in

1  fact based on the things I have discussed with him and

2  also with Mr. Schiefelbien who testified, it seemed the

3  other way around.  That these people were always trying

4  to take advantage of him, not paying him, so he had to

5  continually go after people and -- go after them in a

6  sense of physically but go after them in regard to

7  invoices constantly and showing up at odd hours just to

8  be able to get paid for services that he had already

9  provided.  And that is not an indication of somebody

10 who is worthy of being punished as severely as the

11 statute may suggest the Court can and what the

12 guidelines suggest the Court can.

13         I would suggest otherwise.  I think that he is

14 an individual who's obviously made some mistakes, who

15 got into a situation where, again, he was asked -- it

16 wasn't him going out and seeking somebody else, it was

17 him being asked through phone calls placed to him, can

18 you help me and it's just part of his nature.

19         If you spent longer than 30 minutes with him

20 you would know that anybody that asks anything of him,

21 he tries to help in some way if he can and that's been

22 throughout his work history, within the Asian community

23 in Wichita and elsewhere.  He tries to help anyone that

24 comes to him for whatever they're asking him to do.

25 Most of the time, nothing that has anything to do with

1  massage businesses.

2          But, it's because of that, it's because of

3  that nature that he is responsive to what has been

4  requested of him and he's gone out and he's done things

5  for people that have got him put in the wrong side of

6  the criminal justice system here.  And I would suggest

7  that he has made mistakes about how he -- what he

8  perceives himself to be in the eyes of the law, that

9  has put him, again, in this position.

10          The punishment of incarceration, the

11  seriousness of his offense, again, I would ask the

12  Court to consider proportion.  We're talking about a

13  hundred dollars of money laundering that's he's now

14  convicted of.  That hundred dollars was in context

15  the -- the individual that he was having the

16  transaction with was an individual he had had prior

17  difficult contact with, was an individual who owed him

18  money from previous experiences and was an individual

19  he had no intention of having anything to do with

20  unless he was paid in some way and that is what the

21  hundred dollars -- how it got to him, how he insisted

22  upon it arriving before we do anything for that

23  individual which he eventually used to, as a basis for

24  him to go pick up somebody from the airport.

25          And as far as the Court's suggestion an

1  18-month sentence is appropriate, it's not greater or

2  less than, it's what is sufficient.  I would simply

3  tell the Court I understand your point of view with

4  respect to a sentence of incarceration being

5  appropriate but if there has to be a sentence of

6  incarceration, we would request it be a minimal

7  incarceration.  If probation is not considered to be a

8  best option for Mr. Tee.

9          We would ask the Court to consider 12-month

10  and a day sentence.  We believe that that would promote

11  the requirements of Section 3553 adequately, however,

12  it's still our position and remains Mr. Tee's position,

13  I am sure he doesn't want me to come up and argue for

14  incarceration here, it remains our position that

15  probation is more adequate for his situation, not only

16  based on his level of criminal intent, as I think we

17  have demonstrated, but also on the basis of what he has

18  done since the events that have occurred in terms of

19  how he has been supervising, what he has been doing on

20  supervision, and proportionate argument I made with

21  respect to the degree of harm or loss, the hundred

22  dollar money laundering and, finally, Your Honor, I

23  think it is appropriate to note that there are two

24  other individuals in this case that were cooperating

25  for the Government that were used to facilitate these

1  charges against him.  Both of which have done been

2  something, apparently at least similar or the same

3  nature to what he is being accused of here, and one of

4  those individuals never had charges filed against them,

5  the other individual got harboring illegal aliens

6  conviction or something like that and has gotten a

7  great deal of support with regard to her immigration

8  issues.

9            So I would say proportionally, it would be

10  appropriate for Mr. Tee to have a sentence of probation

11  in this case.

12            Thank you, Your Honor.

13            THE COURT:  Thank you.

14            Mr. Tee, I --

15            MR. HART:  Your Honor --

16            THE COURT:  I'm --

17            MR. HART:  Just -- I just want to --

18            THE COURT:  Mr. Hart, sit down a minute, would

19  you, please.

20            Mr. Tee, I want to hear from you, if there is

21  anything that you have to say and then, Mr. Hart, I'll

22  hear from you.

23            THE INTERPRETER:  In my lifetime, no other way

24  I have been, no better way I have been to what country

25  I have been to, Thailand, Malaysia, Indonesia,

1  Philippine, and every country that I have been to, I
2  never committed to any crime.  This happened here, I
3  was trying to work with them, I was doing my business.
4          If saying that this is a committing to a
5  crime, saying that I have done something wrong, I say
6  apologize to the U.S. Government.  I -- it was not my
7  intention.  I'm not -- I'm here not just one or two
8  days, I've been here for 24 years.  I have been a
9  abiding -- law abiding citizen.  I did not own any
10 illegal or something -- some money that is dirty.
11          I just stand on my point of the services point
12 that I provided.  I did not think about what they have
13 done from the job they were doing.  I just know that
14 what I did was legal and so that's why I have the
15 paper.  Everything I -- I did I always consult with the
16 city counsel, find out is what is legal, what is not
17 legal.  I will do only what is legal.
18          So today, I am hurt.  Just for $100 and then
19 it gets to be so serious.  My -- my attorney Adam
20 already said that because those people have a prior
21 case, and then they did not keep their promise.  It
22 doesn't matter what the sentence is that come out today
23 but I want to say in my heart I did not -- I did not do
24 any illegal, any immoral activity.
25          Before I said this, I want to say -- I want to

1  say this to all the religious practice, I'm sorry.

2  Even when I don't go to church but I always have are

3  my -- had my family, um, rules and guide me through and

4  I -- you can check through my family background all my

5  families are very clear and innocent.  Thank you.

6           THE COURT:  Thank you.  You can have a seat.

7           Mr. Hart.

8           MR. HART:  Your Honor, it occurred to me I had

9  not preserved the Government's position related to

10  voluntary surrender.

11           THE COURT:  Oh.

12           MR. HART:  I just wanted to make note of that

13  since the Court had announced that its intention was to

14  allow voluntary surrender.  The Government opposes

15  that.  We have already made those arguments previously

16  and in other cases.

17           THE COURT:  Thank you very much.  Appreciate

18  it.

19           Well, I'm honestly kind of back where I

20  started with this.  The previously stated findings are

21  accurate, the guideline range was correctly calculated

22  but while Mr. Tee obviously -- and he's acknowledged

23  that he attempted to separate himself or distance

24  himself from what the folks he was dealing with in this

25  case, a Government agent, was planning to do, he

1  certainly facilitated or at least attempted to

2  facilitate, as the charge says, getting her set up with

3  whatever business she was wanting to run and it was

4  pretty clear that he had anticipated that it would be a

5  massage parlor and that it would go beyond legitimate,

6  legal massages and into acts of what would be

7  prostitution under the Kansas code.

8        And so the law doesn't allow people to simply

9  close their eyes to what they're involved in and say,

10 well, I didn't really know because I was not in the

11 middle of it when, in fact, you are facilitating it and

12 that is the case here.

13       And, Mr. Tee, the $100 is not much in the

14 overall scheme of things but it is what it represents

15 in terms of what you're involved in that makes this

16 significant.  I think 36 months is, you know, greater

17 than necessary, I think 33 months is greater than

18 necessary.  As I indicated, 12 months and a day, which

19 translates in to about ten, ten and a half months when

20 you factor in good time, I think is not enough.

21       Trying to find what is appropriate for

22 Mr. Tee, given what his involvement was here, the

23 things that he was doing, and looking at what his

24 knowledge may have been as established by the evidence

25 over a period of time, the information that he had

1 access to, I am satisfied that 18 months is sufficient

2 here.  And when one considers the fact that this is

3 actually his first real conviction, the first time that

4 he will have done and the likelihood that it's going to

5 cost him his ability to stay in the country are also

6 factors I take into account.

7          Mr. Tee, you did do some things wrong and for

8 you to deny that you have broken the law simply is not

9 true.  A jury of 12 found that you did after hearing

10 evidence and after hearing your defense and as I

11 indicated, I think that the evidence was such that the

12 jury could have justifiably gone the other way as well

13 but there certainly was sufficient evidence upon which

14 a jury could find your guilt on these charges.

15          If you'll stand, I am going to impose your

16 sentence.

17          As I say, my previously stated findings are

18 accurate, they will be incorporated in this sentence.

19          Mr. Tee, I am sentencing you to Bureau of

20 Prisons' custody for a term of 18 months on each of

21 Counts 1, 2, and 5.  Those sentences to run

22 concurrently and not consecutively.  That will be

23 followed by two years of supervised release on each of

24 Counts 1, 2, and 5.  Those counts also to run

25 concurrently and not consecutively.

1    Within 72 hours of your release from Bureau of
2  Prisons' custody you are to report to the U.S.
3  Probation Office in the District to which you're
4  released if you're not deported.  While on supervised
5  release you are not to commit another federal, state,
6  or local crime.  You are to comply with the standard
7  conditions adopted by this Court, as well as the
8  special and mandatory conditions that I touched on
9  earlier, which are set out in detail in Part D of the
10 presentence report.
11    You are to pay to the U.S. a $100 per count
12 special assessment for a total of $300.  That goes to
13 the Crime Victims Fund pursuant to 18 U.S.C. Section
14 3013.  The assessment is due immediately and it may be
15 satisfied while you're in Bureau of Prisons' custody.
16    You can have a seat now.
17    Mr. Tee, you do have the right, as does the
18 Government, to appeal this sentence and your
19 conviction.  An appeal taken from this sentence is
20 subject to 18 U.S.C. Section 3742.  You do have the
21 right to appeal but you can lose your right to appeal
22 if you do not timely file a notice of appeal in the
23 District Court.  Rule 4(b) of the Federal Rules of
24 Appellate Procedure gives you 14 days after entry of
25 judgment to file a notice of appeal.  In all

1  likelihood, your judgment in this case will be filed

2  next Monday.

3          So, 14 days from next Monday you will have

4  to -- or within that time period, you will have to file

5  your notice of appeal.  If you're unable to pay the

6  costs of an appeal, you have the right to apply for

7  leave to appeal in forma pauperis.  If you request it,

8  Mr. Adams will prepare and file a notice of appeal on

9  your behalf.

10         I am overruling the Government's request to

11  take you or to detain you at this point, to take you

12  into custody and I am granting you voluntary surrender.

13  You are to report to the facility designated by the

14  Bureau of Prison as notified by the U.S. Marshal.

15         All right.  Mr. Hart, is there anything

16  further from the Government in this case today?

17         MR. HART:  I don't think so, Your Honor.

18         THE COURT:  Thank you.

19         Mr. Adams, anything further?

20         MR. ADAMS:  Yes, Your Honor, if I could.

21         I have spoken to Mr. Tee about his appellate

22  rights and he had indicated that he does desire to file

23  a notice of appeal and I know it may be putting the

24  cart before the horse a little bit and I can file a

25  motion separately if the Court would prefer but once

1 that motion of appeal is filed our anticipation would

2 be that we request the Court to consider an appeal bond

3 while he is on appeal and I guess I would make that an

4 oral request right now, unless you would like us to

5 come back to do that after he has formally filed notice

6 of appeal.

7          THE COURT:  I am actually going to want to let

8 the Government have an opportunity to brief that so,

9 please, go ahead and file your motion and your

10 memorandum.

11          MR. ADAMS:  Very well.

12          THE COURT:  Pretty stringent grounds,

13 obviously, for granting an appeal bond.

14          MR. ADAMS:  I understand.

15          THE COURT:  And, so, as I say, I do want to

16 give the Government an opportunity to respond to that.

17          My guess is that the Government will oppose

18 it, but --

19          MR. ADAMS:  I would guess that, as well.

20          THE COURT:  All right.  Thank you, Mr. Adams.

21          Thank you, Mr. Tee.

22          Thank you, Lori.

23          And, ma'am, thank you for interpreting today.

24          THE INTERPRETER:  Thank you, Your Honor.

25          THE COURT:  Appreciate it.

38

1          (Proceedings conclude at 4:32 p.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              C E R T I F I C A T E

 2         I, Jana L. McKinney, United States Court

 3  Reporter in and for the District of Kansas, do hereby

 4  certify:

 5         That the above and foregoing proceedings were

 6  taken by me at said time and place in stenotype;

 7         That thereafter said proceedings were

 8  transcribed under my discretion and supervision by

 9  means of transcription, and that the above and

10  foregoing constitutes a full, true and correct

11  transcript of requested proceedings;

12         That I am a disinterested person to the said

13  action.

14         IN WITNESS WHEREOF, I hereto set my hand on

15  this, the 3rd day of October, 2016.

16

17                   s/ Jana L. McKinney
                     Jana L. McKinney, RPR, CRR, RMR
18                   United States Court Reporter

19

20

21

22

23

24

25
```

Jana L. McKinney, CSR, RPR, CRR, CRC,  RMR
United States Court Reporter